IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INTEGRATED NETWORK TECHNOLOGIES, INC., a Delaware corporation, | ) ) ) | |
| | ) | 06 C  5270 |
| Plaintiff, | ) | |
| | ) | The Honorable Maria Valdez |
| v. | ) | U.S. Magistrate Judge |
| | ) | |
| RAY ALLEN, INC.,  an Illinois corporation, and Richard R. Bley, | ) ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S STATUS REPORT

Plaintiff INTEGRATED NETWORK TECHNOLOGIES, INC., ("INT") by its attorneys,

HARRIS KESSLER & GOLDSTEIN LLC as and for its Status Report states as follows:

### Nature of Claims by INT

Plaintiff, INT's claims arise out of Defendant, Ray Allen Inc.'s ("RAI") improper

continued use of INT's licensed copyrighted software that INT developed to track technology

assets and maintenance contracts on technology assets (the Asset Tracking and Maintenance

Tracking System").

INT owns a copyright on a computer software program and related screens that was

registered with the United States Copyright Office on July 23, 2003 as copyright Registration

number TXu-1-114-214 for the Asset Tracking and Maintenance Tracking System.  The Asset

Tracking and Maintenance Tracking System was developed by INT over the course of four (4)

years and written in the computer language known as PHP.  In August 2004, RAI was formed by

Todd Ringleman and Richard Bley, former employees of INT, for the purpose of marketing an

asset tracking and maintenance tracking computer software program to a broader market than

that that previously marketed to with the PHP Asset Tracking and Maintenance Tracking

System.  The development of the asset tracking and maintenance tracking computer software program that was to be marketed to Fortune 1000 companies was under development at INT in 2003 using the Microsoft language known as .Net.  The computer programmer who was ultimately responsible for writing 95% of the .Net version of the PHP Asset Tracking and Maintenance Tracking System was Isaac Hall.  Mr. Hall, who is no longer an employee of either INT or RAI testified in his affidavit submitted in this case as follows:

> 12.  During the time period from May 2004 through the end of December 2004, while I was employed by INT, I was the Senior Programmer and Developer; programming over 95% of INT's .Net version of the code for the INT Asset Tracking and Maintenance Tracking System while overseeing the entire System.
>
> 13.  Commencing January 1, 2005 through August 4, 2006, I was an employee of Ray Allen, Inc. where I was the Senior Programmer for Ray Allen, Inc.
>
> 14.  While I was employed by Ray Allen, Inc., the asset tracking and maintenance tracking system branded by Ray Allen, Inc. as "RACSystem", was in essence the .Net version of INT's Asset Tracking and Maintenance Tracking System and which was derived entirely upon INT's PHP version of the Asset Tracking and Maintenance Tracking System and displayed substantially similar screens for customer use as that in INT's PHP version of the Asset Tracking and Maintenance Tracking System.
>
> 15.  I have personal knowledge of the source code and the steps taken by INT to develop and implement the .Net version of the Asset Tracking and Maintenance Tracking System.
>
> 16.  I was personally responsible for the majority of the programming work performed in building the .Net Asset Tracking and Maintenance Tracking System for INT.
>
> 17.  At the time that I began writing the source code for the .Net version of the system, I was aware that INT had a PHP version of the Asset Tracking and Maintenance Tracking System and I had participated in the

past development efforts of the PHP version of the Asset Tracking and Maintenance Tracking System

18. The INT programmers used the physical and written architecture of the PHP version of the system which was already in existence as the blueprint for writing the source code for the .Net version of INT's Asset Tracking and Maintenance Tracking System.

19. Although .Net is written in a different "language", the basic structures of the .Net version and the PHP version are the same, namely, functionality, look and feel of the program, templates, screens fields and the data structures.

20. The .Net version of the Asset Tracking and Maintenance Tracking System is directly derived from the previously existing PHP version.

On September 29, 2006, Judge Kendall, after considering the arguments, briefs and affidavits submitted in support of and in opposition to INT's Petition for Entry of a Temporary Restraining Order, denied the Petition. The basis for Judge Kendall's' denial are found at pages 74-76 of the transcript attached to Defendant Bley's Response to the Motion for Entry of a Preliminary Injunction and are based upon four factual issues: 1) whether the .Net version is a modification of the PHO version that constitutes a derivative use of a protected copyright (Trans. P.74); 2) whether a licensing agreement actually existed which permitted RAI to use the protected software or whether there was just use of a newly derived and newly imagined software (Trans. P. 74); 3) whether the .Net program is substantially similar to INT's copyrighted work (Trans. P. 75); and 4) whether there is irreparable harm to INT. (Trans. P. 76).

Plaintiff seeks entry of a preliminary injunction order restraining RAI from its unauthorized use of the RACSystem[1], which it maintains is directly derived from its copyrighted PHP Asset Tracking and Maintenance Tracking System.

---

[1] RACSystem is the marketing name for Defendants' asset tracking and maintenance tracking software which INT asserts was directly derived from its copyrighted PHP Asset Tracking and Maintenance Tracking System.

## INT's Discovery

On October 23, 2006, INT propounded to Defendant RAI its First Request for Production of Documents, First Request for Admission of Facts and Genuineness of Documents and Notices of Deposition for Richard Bley, Jason Terchin, Mark Nashlund and Agnes Szczepura. INT expects to issue its First Set of Interrogatories by October 31, 2006.

## Discovery Protocol

A seminal issue in the case is whether the .Net version claimed by RAI to have been started from scratch[2] after RAI was formed in August, 2004, was derived in whole or in part from the copyrighted PHP Asset Tracking and Maintenance Tracking System. The .Net source code, as it was being written by Mr. Hall while an employee of both INT and later RAI, was safely stored in a version control program known as Visual Source Safe 6.0. This program was used both at INT by Mr. Hall as well as at RAI by Mr. Hall until November, 2005 when the version control program utilized by RAI was switched to Visual Studio Team. I refer to Mr. Hall's testimony above not for the purpose of rehashing the facts but merely to illustrate that the discovery process that RAI contends is so intricate and involved and which requires a deviation from the norm for discovery, whether conventional or electronic is misplaced. The electronic discovery as it relates to the version control programs is straightforward and not electronically challenging. Similarly, electronic discovery relating to emails and correspondence is relatively equally unchallenging. Over the course of the past two weeks, Plaintiff's counsel interviewed two electronic discovery vendors, LexisNexis Applied Discovery and FIOS, each of whom represented that the manner of aggregating the data and then culling for responsive documents in response to relevant discovery requests did not appear to be out of the ordinary.

---

[2] Richard Bley, a defendant and president of RAI testified in his affidavit at paragraph 4: "RACS was built form scratch for the sole purpose of enterprise asset management, wholly developed and owned by Ray Allen. RACS is written in Visual Studio ASP.NET with many Microsoft enterprise components such as Component Art Grids."

a.    **Discovery Schedule**

As an initial matter, the fact that certain discovery is electronic based versus paper based does not automatically elevate this case to the stratosphere of complications in production of responsive documents and data.   Granted there are some cases that involve multiple offices and hundreds or even thousands of storage devices that render discovery more complex than a "traditional" case, yet the facts in the case at bar do not rise to the level of complexity that could or should warrant the type of Discovery Protocol suggested by Defendant.

On October 18, 2006, RAI forwarded to INT's counsel a Proposed Discovery Schedule and a Proposed Discovery Protocol for Electronic Discovery.   RAI's Proposed Discovery Schedule contemplates a schedule that provides for dispositive motions to be filed by June 26, 2007 and does not even propose a trial date.   INT's proposed Discovery Schedule allows for a trial on the merits without requiring an evidentiary hearing on INT's Motion for Entry of a Preliminary Injunction.   Although Plaintiff proposes an aggressive discovery schedule, it serves the purpose of accomplishing a somewhat expedited trial, thus preserving the emergent relief that INT is seeking, without burdening the Court with what would be in essence two trials.   Plaintiff's concession to exploring a single trial on the merits in March, 2007 should not be construed as an admission that it has waived its right to seek a hearing on its Motion for Entry of a Preliminary Injunction.   Rather, Plaintiff is merely attempting to follow up on a suggestion made by Judge Guzman for a single trial on the merits while preserving an accelerated timetable for ruling sought by Plaintiff.   In the event that the Court cannot accommodate a trial in March, 2006, Plaintiff would like to proceed with a hearing on its Motion for Entry of a Preliminary Injunction.

Defendant's Proposed Electronic Discovery Protocol is convoluted and cumbersome. Rather than merely have the parties propound discovery requests and then, based upon the requests, either make objections and/or produce the relevant data, Defendants presuppose that a

5

party will proceed in an unethical manner and not produce the document and/or data that is responsive to a discovery request and further proposes a wide ranging replication of an entire storage device. Further, Defendants suggest that the "computer consultant" will then make the determinations as to what is relevant. (See paragraphs 13 and 14 of the Proposed Protocol). The proposed procedure is not only cumbersome but duplicative of the process that a party's attorney will undertake leading to likely delays in the productions as well as increased costs and unnecessary and costly motion practice. Tier 1 electronic discovery vendors have tried and tested proprietary software applications that allow for thorough searching methodologies and production of documents and/or data. Plaintiff has elected to secure FIOS based upon its interview of two Tier 1 electronic discovery vendors among numerous other Tier 1 vendors in the marketplace. The proposal urged by Defendants does not make sense as applied to our facts.

Defendants have repeatedly stated that there is no irreparable harm because, to their knowledge, INT is not competing with RAI and, therefore, INT is not entitled to a hearing on its Motion for Entry of a Preliminary Injunction. In cases of copyright infringement, however, there is a presumption of irreparable harm to the plaintiff. *Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 700 (N.D. Ill. 2004). INT does not need to market a competing product in order to demonstrate irreparable harm. *Id.* Courts may presume that all damages incurred due to copyright infringement are irreparable, such that any legal remedy would be inadequate. *Ty, Inc. v. GMA Accessories, Inc.*, 959 F. Supp. 936, 943 (N.D.Ill. 1997), *aff'd* 132 F.3d 1167 (7th Cir. 1998).

**Conclusion**

Plaintiff, INTEGRATED NETWORK TECHNOLOGIES, INC. respectfully requests that the Court adopt its Proposed Discovery Schedule and all discovery to proceed as outlined therein.

INTEGRATED NETWORK
TECHNOLOGIES, INC.

By:   /s/ *Richard N. Kessler*
      One of its Attorneys

**ATTORNEYS FOR PLAINTIFF**
HARRIS KESSLER & GOLDSTEIN LLC
RICHARD N. KESSLER, ESQ. (ID 6183140)
JASMINE de la TORRE, ESQ.  (ID 6256929)
640 N. LaSalle Street – Suite 590
Chicago, IL 60610-3731
312/280-0111